FILED

March 24, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 12:27 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| **KIMBERLY WILLIAMS**<br>Employee, | ) **Docket No.: 2015-07-0221** |
| v. | ) **State File No.: 94862-2014** |
| **VOLVO GROUP**<br>Employer, | ) **Judge Amber E. Luttrell** |
| And | ) |
| **LIBERTY MUTUAL INSURANCE**<br>Insurance Carrier. | ) |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Kimberly Williams, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Williams seeks medical benefits, including surgery, for injuries to her right arm. The central legal issue for determination is whether Ms. Williams presented sufficient medical proof of an injury by accident or aggravation of a preexisting condition arising primarily out of and in the course and scope of her employment with the employer, Volvo Group. If so, the second issue for determination is whether the recommended surgery is medically necessary for Ms. Williams' work injuries. For the reasons set forth below, the Court finds Ms. Williams did not carry her burden of proving entitlement to the requested benefits at this time.

### History of Claim

Ms. Williams is a fifty-two-year-old resident of Henderson County, Tennessee. She worked as a production assembler for Volvo in Lexington, Tennessee. Ms. Williams worked in two different departments, the "engine side" and the "drive side." On the engine side, she used seven different air tools and worked with parts weighing up to thirty-five pounds. On the drive side, she used three different air guns. Ms. Williams worked ten-hour days, four days a week. She also worked overtime up to ten hours each week. She developed pain over time in her dominant right arm from repetitively jerking and bouncing her right arm while using the air guns.

1

Ms. Williams testified she suffered an acute injury on November 17, 2014, when she worked on the drive side and had to use a torque gun to "torque down a nod." She stated, "[I]t jerked so hard it flew out of my hand and back up to the ceiling. That really did me in." She injured her right hand, wrist, and elbow. Ms. Williams reported the injury to her supervisor, Anthony Gean. Volvo filed a First Report of Injury stating, "EE was using a torque gun and it jerked her right hand and thumb up to the right elbow." (Ex. 1.) Ms. Williams testified on cross-examination that she is claiming a "repetitive injury over a certain amount of time," rather than an acute injury.

According to Ms. Williams, Volvo provided her a panel of orthopedic physicians from which she selected Dr. James Warmbrod for treatment.

Ms. Williams saw Dr. Warmbrod on December 23, 2014. She gave a history of working in production using an air gun for many years. (Ex. 4.) Mr. Williams reported some discomfort in her right elbow and right hand for at least two years. *Id.* She stated on approximately December 4, 2014,[1] she was "using an air gun and her wrist got jerked and twisted." *Id.* She experienced "pain along the base of the thumb and up into the arm to the elbow." *Id.* Ms. Williams complained of minimal tingling in the thumb, index, and middle finger. Her main complaint was over the thenar aspect of the thumb. She stated the tingling started there and went up the lateral side of her forearm to the elbow. *Id.*

Following an exam, Dr. Warmbrod diagnosed carpal tunnel syndrome, lateral epicondylitis of the right elbow, and carpometacarpal (CMC) degenerative joint disease. He ordered a right nerve conduction study (NCS), which revealed mild median neuropathy at the wrist consistent with carpal tunnel syndrome. *Id.* at 5. Dr. Warmbrod treated Ms. Williams conservatively and took her off work. When her thumb pain returned, Dr. Warmbrod referred her to a hand specialist, Dr. Fred Torstrick, for further evaluation. *Id.*

Ms. Williams saw Dr. Torstrick on February 24, 2015, and complained of tenderness in the right thumb and elbow, and numbness and tingling in her right hand since approximately May 17, 2014. (Ex. 5.) Ms. Williams gave Dr. Torstrick a history of a work injury on or about December 17, 2014, when she used an air gun and her right wrist twisted causing pain at the base of the right thumb radiating to the elbow. Following an exam, he diagnosed CMC degenerative joint disease, lateral epicondylitis of the right elbow, and pain in her wrist joint. *Id.* Dr. Torstrick ordered an MRI of her right thumb and wrist to rule out any ligamentous injury. He noted Ms. Williams was asymptomatic in the lateral epicondyle at the time of her visit and referred her back to Dr. Warmbrod for any recurrent symptoms.

---

[1] The Court notes three different dates of injury in the medical proof and documentary evidence: November 17, December 4, and December 17.

2

Ms. Williams underwent a right wrist and right hand MRI on March 3, 2015. (Ex. 5 at 19.) She also underwent a second NCS on March 10, 2015, which still indicated mild carpal tunnel syndrome. *Id*. at 22. Dr. Torstrick reviewed the MRI results and diagnosed a solitary bone cyst at the base of the right index finger metacarpal, arthralgia of the hand with possible mild chondromalacia of the ulnar aspect of the lunate, CTS, lateral epicondylitis, and CMC joint sprain. *Id*. at 23.

Concerning causation, Dr. Torstrick opined the bone cyst and probable ganglion cyst were unrelated to her work injury. Regarding her carpal tunnel syndrome, Dr. Torstrick stated, "carpal tunnel syndrome is frequently multifactorial and while her work activities may likely have aggravated her carpal tunnel symptoms, I cannot say that her carpal tunnel symptoms are solely related to her work activities." *Id*. at 26. Based upon the length of her symptoms and the MRI results, Dr. Torstrick referred Ms. Williams to another hand surgeon, Dr. Mike Milek, for further evaluation.

Ms. Williams saw Dr. Milek at Tennessee Orthopedic Alliance on April 1, 2015, for another opinion. (Ex. 6.) Following review of the diagnostic studies and examination, Dr. Milek also diagnosed lateral epicondylitis, CMC joint disease, and carpal tunnel compression. He recommended a resection arthroplasty of the CMC joint and carpal tunnel release. Dr. Milek assigned limited-duty work restrictions consisting of only occasional use of the right hand with no heavy gripping and no lifting over five pounds. *Id*. Ms. Williams testified Volvo terminated her because they could not accommodate her restrictions.

Concerning causation, Dr. Milek opined, "[T]hese issues in my opinion are aggravated by her work activities, but they are multifactorial in origin. There is an association with her work activities but her work activities and activities in general are not the sole cause of these three difficulties." (Ex. 6 at 43.) The nurse case manager, Susie Moore, subsequently sent a fax to Dr. Milek asking if Ms. Williams' conditions "arose primarily, over 50% from the course of her employment." In a handwritten response dated April 22, 2015, Dr. Milek stated, "not greater than 50%."

Volvo subsequently referred Dr. Milek's surgical recommendation to Liberty Mutual Managed Care (Prium), for utilization review. Dr. Robin Simon performed the evaluation and issued a report dated April 8, 2015, denying the recommended surgery. (Ex. 8.) She opined the clinical information did not support the medical necessity of the surgery. *Id*. On the same date, Liberty Mutual issued a letter to Dr. Milek and Ms. Williams notifying them of the denial. Ms. Williams appealed the UR denial and by letter dated May 4, 2015, Dr. Talmage, Assistant Medical Director of the Bureau of Workers' Compensation, agreed with Dr. Simon's denial based upon lack of medical necessity. (Ex. 9.)

3

Volvo filed a Notice of Denial on May 4, 2015, and stated the basis for denial was "not work related." (Ex. 2.) Ms. Williams subsequently filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. Williams filed a Request for Expedited Hearing, and this Court heard the matter on February 18, 2016.

At the Expedited Hearing, Ms. Williams asserted she developed gradual problems in her right arm, but the injury on November 17, 2014, was "the straw that broke the camel's back." First, Ms. Williams contended she is likely to prevail at a hearing on the merits on causation based upon the opinions expressed by Dr. Torstrick and Dr. Milek. Ms. Williams further argued that Dr. Milek's causation opinion supported her contention that she suffered an aggravation of her preexisting condition that arose primarily out of and in the course and scope of her employment at Volvo. Secondly, Ms. Williams contended she is entitled to the surgery recommended by Dr. Milek, despite the UR denial, based upon Tennessee Code Annotated section 50-6-204(a)(3)(H) (2015), which provides any treatment recommended by the authorized treating physician shall be presumed medically necessary.

Volvo countered that Dr. Milek opined Ms. Williams' conditions did not primarily arise out of and in the course and scope of her employment and his causation opinion is afforded a presumption of accuracy pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2015). Volvo further argued that Dr. Milek's opinion was clear and unequivocal and Ms. Williams offered no countervailing medical proof to overcome the presumption afforded to Dr. Milek. Concerning surgery, Volvo argued the statute provides the process for utilization review and both the private UR physician and Dr. Talmage opined that surgery was not reasonably necessary at this time. Volvo argued Ms. Williams is not entitled to the recommended surgery based upon the UR denial.

**Findings of Fact and Conclusions of Law**

Ms. Williams is correct that she need not prove every element of her claim by a preponderance of the evidence at this Expedited Hearing stage in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, she must come forward with sufficient evidence from which this court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether she has met her burden, the Court will not remedially or liberally construe the law in her favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Ms. Williams nor Volvo. *See* Tenn. Code Ann. § 50-6-116 (2015).

*Analysis*

4

The Court finds the controlling statute on the issue in this case is Tennessee Code Annotated section 50-6-102(14) (2015). It provides that to be compensable, Ms. Williams must show her alleged injury arose primarily out of and in the course and scope of her employment. To do so, she must show her injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting condition unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Ms. Williams' testimony concerning her injury was somewhat unclear. She testified to an acute injury on November 17, 2014, when working with a torque gun, but also testified she developed a repetitive injury to her right arm over time. Ms. Williams acknowledged a two-year history of symptoms in her wrist and elbow prior to her injury on November 17, 2014, for which she self-treated with the use of a wrist brace she purchased at Walmart. She testified further she experienced pain in her right arm from repetitively jerking and bouncing her right arm while using the air guns. However, she testified she did not seek treatment for her right wrist and elbow until she saw Dr. Walker following the work incident on November 17, 2014. The histories taken by Drs. Warmbrod and Torstrick are consistent with Ms. Williams' testimony regarding both her preexisting symptoms and her specific jerking injury involving the torque gun.

Concerning medical causation for Ms. Williams' right arm condition, the only medical proof before the Court is from Dr. Torstrick and Dr. Milek. Dr. Torstrick opined the bone cyst in the index finger and probable ganglion cyst of the ring finger found on MRI were unrelated to Ms. Williams' work injury. Regarding her carpal tunnel syndrome, Dr. Torstrick stated, "carpal tunnel syndrome is frequently multifactorial and while her work activities may likely have aggravated her carpal tunnel symptoms, I cannot say that her carpal tunnel symptoms are solely related to her work activities." (Ex 5. at 26.) Dr. Torstrick did not comment regarding causation for the lateral epicondylitis. The Court finds Dr. Torstrick's causation opinion insufficient to establish Ms. Williams sustained an acute injury or aggravation arising primarily out of and in the course and scope of her employment at Volvo.

Turning to Dr. Milek's opinion, he stated, "[T]hese issues in my opinion are aggravated by her work activities, but they are multifactorial in origin. There is an association with her work activities but her work activities and activities in general are not the sole cause of these three difficulties." (Ex. 6 at 43.) When asked if Ms. Williams' conditions "arose primarily, over 50% from the course of her employment," Dr. Milek responded and noted, "not greater than 50%." (Ex. 7.)

5

At the Expedited Hearing, Ms. Williams asserted the issue is whether she sustained an aggravation of her preexisting conditions in her right arm primarily arising out of and in the course and scope of her work activities. She argued Dr. Milek's statement in his record that her condition was aggravated by her work activities provides sufficient proof from which the Court may conclude she is likely to prevail at a hearing on the merits in establishing medical causation. The Court respectfully disagrees.

The Court finds while Dr. Milek did associate her symptoms with Ms. Williams' work activities, he unequivocally opined that Ms. Williams' conditions did not arise *primarily out of* her employment and stated "not greater than 50%." (Ex. 7.) (Emphasis added.) Pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2015), Dr. Milek's opinion is afforded a presumption of correctness on the issue of medical causation that is rebuttable only by a preponderance of the evidence. Ms. Williams did not introduce contrary medical proof to rebut the presumption.

Ms. Williams further argued that Volvo did not ask Dr. Milek specifically whether she suffered an *aggravation* that arose primarily out of and in the course and scope of her employment. The Court is not persuaded by Ms. Williams' more narrow interpretation of the question posed to Dr. Milek and his overall causation opinion. The Court finds Dr. Milek's opinion fails to support Ms. Williams' contention that she sustained an aggravation of a preexisting condition arising *primarily out of* and in the course and scope of her employment. However, even if the Court accepted Ms. Williams' interpretation of Dr. Milek's opinion, the result would be that there is no medical proof before the Court addressing whether Ms. Williams suffered an aggravation of her preexisting condition arising primarily out of and in the course and scope of her employment. The Court notes Ms. Williams has the burden of proof to come forward with sufficient medical evidence from which this Court may determine she is likely to prevail at a hearing on the merits. Based upon the medical evidence at this time, the Court finds Ms. Williams' did not carry that burden.

In sum, the Court finds the medical proof, at this time, is insufficient to rebut the presumption of correctness afforded Dr. Milek. Accordingly, the Court finds Ms. Williams did not come forward with sufficient medical evidence from which the Court could determine she is likely to prevail on the merits at trial. In light of the Court's finding on medical causation, the Court finds the secondary issue of whether Ms. Williams' surgery is medically necessary need not be addressed at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Williams' claim against Volvo and its workers' compensation carrier for the requested medical benefits is denied at this time.

6

2. This matter is set for an Initial (Scheduling) Hearing on May 19, 2016, at 2:00 p.m. central time.

**ENTERED this the 24th day of March, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice

7

of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. First Report of Work Injury
2. Notice of Denial of Claim for Compensation dated May 4, 2015
3. Volvo Penta Job Description-Production Assembler
4. Medical records of Dr. James Warmbrod
5. Medical records of Dr. Fred Torstrick
6. Medical records of Dr. Michael Milek
7. Dr. Milek's causation opinion
8. Utilization Review Records
9. Dr. Talmage's May 4, 2015 letter affirming UR decision

Technical record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Position Statement
5. Pre-Hearing Order filed January 4, 2016
6. Consent Order Rescheduling Expedited Hearing
7. *DeGalliford v. United Cabinet Co., LLC,* No. 02013-00943-WC-R3-WC, 2014 Tenn. LEXIS 194 (Tenn. Workers' Comp. Panel 2014).
8. Employer's February 22, 2016 position statement in response to *DeGalliford v. United Cabinet* decision

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Jeffrey Boyd, Esq., Employee's Counsel | | | X | jboyd@hillboren.com |
| Jonathan May, Esq., Employer's Counsel | | | X | JMay@LewisThomason.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11